UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN A. EHRLICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 01 C 4277 |
| | ) | |
| HOWARD PETERS III, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants Linda Renee Baker, Mary Bass, Timothy Budz, Thomas Monahan, Robert Glotz, John Hargis, Joe Dorsey, Angela Bratcher, and Roberta Fews (collectively referred to as "Defendants") for judgment on the pleadings in their favor to dismiss Plaintiff Steven Ehrlich's claims against them. For the reasons set forth below, the motion is denied in part and granted in part.

## BACKGROUND

Ehrlich has been civilly detained in the custody and control of the Illinois Department of Human Services ("DHS") pursuant to the Sexually Violent Persons Act ("the SVP Act"), 725 ILCS 207/1 *et seq.* since July 2, 1999. On June 7, 2001,

Ehrlich filed a complaint ("June 2001 Complaint") alleging the following: 1) an equal protection claim regarding the difference in treatment between DHS residents and Illinois Department of Corrections ("IDOC") inmates housed at the DHS Treatment and Detention Facilities located in Sheridan and Joliet, Illinois (the "Joliet TDF"); 2) a due process claim regarding the physical conditions of confinement and lack of opportunities for privileges at the Joliet TDF; 3) a procedural due process claim based on Ehrlich's subjection to alleged "disciplinary sanctions" in the absence of posted rules; 4) an equal protection claim based on preferential treatment afforded certain individuals held under the SVP Act who consent to sex offender treatment and others, like Ehrlich, who decline to consent to such treatment; and 5) a claim that Ehrlich has been subjected to more restrictive conditions while at the Joliet TDF than he had been at IDOC.

On September 27, 2001, Ehrlich filed another complaint ("September 2001 Complaint") styled as *Ehrlich v. Mantzke, et al.*, No. 01 C 7449 ("*Mantzke*"), alleging that defendants Michelle Mantzke, Angela Bratcher, Travis Hinze, Kevin Jestice, Robert Brucker, Jr., Sally Hougas, Timothy Budz, Jason Moody, A. Hughes, B. McElroy, D. Dougherty, J. Perez, and J. Moffett ("*Mantzke Defendants*") violated his First Amendment rights by conducting a search of his room, confiscating his legal documents and newspaper articles, and refusing to return them. Ehrlich also alleged

that the *Mantzke Defendants* violated his Fourteenth Amendment due process rights by not posting rules, not providing notice, and not conducting proper disciplinary hearings when he had allegedly violated a rule. On January 3, 2003, Ehrlich settled his claims against the *Mantzke Defendants*. In the terms of the release executed in conjunction with the settlement, Ehrlich:

> release[d] and forever discharge[d] Defendants Michelle Mantzke, Angela Bratcher, Sally Hougas, Jason Moody, A. Hughes, B. McElroy, D. Dougherty, J. Perez, J. Moffet, and Timothy Budz, (hereinafter "Defendants"), Dr. Travis Hinze, Dr. Robert Brucker and Kevin Jestice in their individual and official capacities, the Illinois Department of Human Services and the State of Illinois, their agents, former and present employees, successors, heirs and assigns and all other persons (hereinafter "Releasees") from all actions, claims, demands, setoffs, suits, causes of action, controversies, disputes, equitable relief, compensatory and punitive damages, costs and expenses which arose or could have arisen from the facts alleged or claims made in the instant case, which Plaintiff owns, has or may have against the Defendants/Releasees, whether known or unknown, from the beginning of time until the effective date of this Agreement, including but not limited to those at law (including actions under 42 U.S.C. Section 1983) or in equity.

We dismissed the *Mantzke* matter in accordance with the terms of the release.

Defendants now seek to be dismissed from Ehrlich's June 2001 Complaint via a 12(c) Motion for Judgment on the Pleadings.

## LEGAL STANDARD

Rule 12(c) permits a court to enter judgment on the pleadings, once the "pleadings are closed." In this case, Ehrlich filed his complaint on June 7, 2001. Since then, Defendants have both answered and filed affirmative defenses. Recently, on October 23, 2007, over six years after Ehrlich filed his initial complaint, Ehrlich filed a motion to amend his complaint. Our denial of Ehrlich's request signified that all pleadings in the case were closed.

A Rule 12(c) motion is evaluated using the same standards as a motion made pursuant to 12(b)(6), except that the court may consider only the contents of the pleadings. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000); *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). For this reason, judgment on the pleadings is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). In considering a Rule 12(c) motion, a court accepts "all well-pleaded allegations in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Forseth*, 199 F.3d at 368. Dismissal pursuant to Rule 12(c) is appropriate only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.* With these considerations in mind, we turn to Defendants' motion.

**DISCUSSION**

Defendants make three arguments in support of their Rule 12(c) motion. First, they argue that the claims in Ehrlich's June 2001 Complaint do not survive the release because Ehrlich agreed to "release and forever discharge [DHS, certain DHS employees, and unnamed agents of DHS] from all actions...which [Ehrlich] owns, has or may have...whether known or unknown, from the beginning of time until the effective date of this Agreement, including but not limited to those at law (including actions under 42 U.S.C. Section 1983*)*." Second, Defendants contend that the doctrine of *res judicata* bars Ehrlich's claims contained in Count V of his June 2001 Complaint. Third, Defendant Fews complains that she should be dismissed from this case because as Warden of the Sheridan Correctional Facility in 2000, she was an agent of the State of Illinois, and thus discharged by the release.

**I. The Release and the Claims in the Present Action**

Ehrlich contends that Defendants' first and third arguments are without merit because the allegations contained in his June 2001 extend far beyond the issues contemplated in the release. By its terms, the release states that it "shall be construed and interpreted in accordance with the laws of the State of Illinois." As such, we are bound by Illinois state law in our interpretation of the release terms. In Illinois, "a release is a contract subject to traditional rules of contract interpretation." *People ex.*

*rel. Devine v. Time Consumer Marketing, Inc.*, 782 N.E.2d 761, 765 (Ill. 2002). "Illinois follows the 'four corners rule' for contract interpretation," which requires that a court only look to the contract itself to determine the intentions of the parties. *Clarendon America Ins. Co. v. 69 W. Washington Management LLC*, 870 N.E.2d 978, 984 (Ill. 2007). The relevant portion of the release provision mentioned above states:

> Plaintiff...hereby releases and forever discharges Defendants Angela Bratcher...and Timothy Budz, the Illinois Department of Human Services and the State of Illinois, their agents, former and present employees, successors, heirs and assigns and all other persons (hereinafter "Releasees") from all...claims...which arose or could have arisen from the facts alleged or claims made in the instant case, which Plaintiff owns, has or may have against the Defendants/Releasees...

The release provision is not ambiguous. Therefore, we must look only to the terms of the release in our consideration of Defendants' motion. In doing so, it is clear that the Defendants' dispute with Ehrlich hinges on whether the claims memorialized in Ehrlich's June 2001 Complaint "arose or could have arisen from the facts alleged or claims made in [Ehrlich's September 2001 Complaint]." Ehrlich provided the following facts in his September 2001 Complaint to support his claim that defendants violated his First and Fourteenth Amendments rights:

> 1) Defendants brought him before the DHS Behavior Management Committee for a disciplinary hearing without ever writing up an "Incident Report" explaining or notifying him of the rule he allegedly violated;

2) Defendants conducted a "shake down" of his room and confiscated "newspaper articles pertaining to sex cases, the SVP Act, sex laws, etc.;" and

3) Defendants kept him on a general unit floor for five days where he had to be locked up each night at 10:00 p.m., when he should have been kept on a responsible unit floor, where lock-up was at 10:45 p.m.

Ehrlich provided the following facts in his June 2001 Complaint to support his claim that Defendants violated his Eighth and Fourteenth Amendment rights:

1) Counts I, II, and III: Unlike inmates at IDOC, civil detainees at the Joliet TDF, like Ehrlich, are denied access to the law library; access to educational and/or vocational programs; access to job opportunities; access to the gym, yard, and/or exercise; access to photocopies; access to hot adequate meals; access to regular haircuts; and regular access to bathing facilities.

2) Count IV: The SVP Unit at the Joliet TDF, including Ehrlich's cell, is infested with cockroaches, rodents, and other vermin. His cell has poor ventilation, is inadequately heated, has contaminated water, and no hot water most of the time.

3) Count V: Defendants have subjected Ehrlich to disciplinary sanctions, including lockdown on "Secure Management Status," without informing him of the rules or the basis for his violations.

4) Count VI: Defendants treat Ehrlich worse than other civil detainees incarcerated within the SVP Unit who accept treatment for their alleged "mental disorders" because Ehrlich refuses such treatment.

5) Count VII: Defendants keep Ehrlich in a more restrictive environment than other IDOC inmates.

After reviewing these two complaints side by side it is apparent that the facts contained in Count V of Ehrlich's June 2001 Complaint are the only facts that "arose

or could have arisen from the facts alleged or claims made in [Ehrlich's September 2001 Complaint]." The remaining Counts of the June 2001 Complaint arise from facts separate from those in the September 2001 Complaint. Accordingly, we conclude that the allegations contained in Count V of the June 2001 Complaint are within the scope of the release executed in the *Mantzke* case and that Count V must therefore be dismissed in its entirety. However, the remaining claims are outside the ambit of the release and relief under Rule 12(c) is not warranted for those claims.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for judgment on the pleadings is granted with respect to Count V. As to Counts I, II, III, IV, VI, and VII, Defendants' motion is denied.

    *Charles P. Kocoras*
_____
Charles P. Kocoras
United States District Judge

Dated:  November 21, 2007